UNITED STATES of America

v.

Prasit IMNGREN.

UNITED STATES of America

v.

Kenneth JOHNSON.

Criminal Nos. 95–00458–A, 95–00459–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 13, 1995.

Scott Lawson, Assistant United States Attorney, Alexandria, VA, for Plaintiff.

D. Curtis Danielson, Alexandria, Virginia, for Defendants.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

The issue in this case is whether a driving license suspension for one year on all military installations constitutes double jeopardy to a person charged with driving under the influence. This Court finds the suspension for one year violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

This matter is before the Court on consolidated appeal filed by the United States in the cases styled *United States v. Prasit Imngren*, and *United States v. Kenneth Johnson*.

### I.

On January 10, 1995, at Fort Belvoir, Defendant Johnson was stopped by military policemen for driving 63 miles per hour in a posted 35 mile per hour zone. Allegedly, the military policemen developed probable cause to believe that Defendant Johnson had been drinking and arrested him for DUI. Defendant Johnson was given a breath alcohol content ("BAC") test which showed a BAC of 0.07% by volume. The Fort Belvoir Garrison Commander then suspended Defendant Johnson's post driving privileges. Defendant Johnson was subsequently charged with DUI after having been previously convicted of a DUI offense within five years, in violation of 18 U.S.C. § 13 and Va.Code § 18.2–266(ii); reckless driving, in violation of 18 U.S.C. § 13 and Va.Code § 46.2–862(i); and driving with a suspended license, in violation of 18 U.S.C. § 13, and Va.Code § 46.2–301.

On March 23, 1995, at Fort Belvoir, Defendant Imngren was stopped for a traffic violation. Suspecting that Defendant Imngren was intoxicated, the military policeman asked him to take a BAC test. Defendant Imngren refused to take the test. The Fort Belvoir Garrison Commander then suspended Defendant Imngren's post driving privileges. Defendant Imngren was subsequently charged

with DUI; refusing to take a BAC test, in violation of 18 U.S.C. § 3118(b); and failing to drive in a single lane, in violation of 32 C.F.R. 634.25(f) and Virginia law.

In each of these cases, the defendant was driving on a roadway in Fairfax County, Virginia, at a location within the boundaries of Fort Belvoir, a federal military installation post (hereinafter "post"), and within the special maritime and territorial jurisdiction of the United States. Each defendant had his post driving privileges suspended by the Fort Belvoir Garrison Commander after he was arrested for driving while under the influence of alcohol ("DUI") on Fort Belvoir.

Subsequently, each defendant was charged with DUI in the United States District Court for the Eastern District of Virginia, in violation of 18 U.S.C. 13, assimilating Va.Code Ann. § 18.2–266. A magistrate judge dismissed each defendant's DUI charge on the ground that the suspension of the defendant's post driving privileges constituted prior punishment under the Double Jeopardy Clause.

On consolidated appeal, the Government appeals the magistrate's dismissal of each defendant's DUI charge. Essentially, the Government argues that the magistrate judge's ruling should be reversed because Fort Belvoir's driving privilege suspension scheme is not punishment under the Double Jeopardy Clause.

## II.

■ The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause provides three separate protections for criminal defendants: "(1) a second prose-

cution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).

■ While the majority of Double Jeopardy Clause cases involve the prohibition of two criminal prosecutions, the Double Jeopardy Clause also applies to civil actions by the Government, which, prevents a defendant from being subject to both civil and criminal penalties, that are intended to be punitive. *See, Halper,* 490 U.S. at 448, 109 S.Ct. at 1901–02 ("Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment."). Therefore, if the Government takes civil action first and the civil sanction constitutes punishment, the Double Jeopardy clause bars a subsequent criminal trial. *See, United States v. Mayers,* 897 F.2d 1126, 1127 (11th Cir.) (per curiam), *cert. denied,* 498 U.S. 865, 111 S.Ct. 178, 112 L.Ed.2d 142 (1990) (the *Halper* principle applies whether civil penalty or criminal punishment comes first).

In the instant cases, each defendant argued before the magistrate judge that the suspension of his right to operate a motor vehicle on all military installations [1] for the period of one year was a punishment proscribed by the Double Jeopardy Clause.

. In making its determination that the Government's prosecution of each defendant in federal court constituted a successive attempt to impose punishment in violation of the Double Jeopardy Clause, the magistrate court held that the administrative license suspension pursuant to Army regulation 190–5 [2] and each defendant's pending criminal

---

1. As explained more fully herein, each defendant's suspension at one military installation applies to all military installations.

2. Army Regulation 190–5 empowers an installation commander to "[r]emov[e] intoxicated drivers from installation roadways followed by the expeditious application of appropriate sanctions." It provides in pertinent part:

   [I]nstallation driving privileges will be immediately suspended pending resolution of the in-

toxicated driving incident in the following circumstances:
   (a) Refusal to take or complete a lawfully requested chemical test to determine contents of blood for alcohol or other drugs. (b) Operating a motor vehicle with a blood alcohol content (BAC) of 0.10 percent by volume or higher or in violation of the law of the jurisdiction that is being assimilated on the military installation.
   (c) Operating a motor vehicle with a BAC of at least 0.05 percent by volume but less than

prosecution constituted separate proceedings, and that the one year administrative license suspension pursuant to Army regulation 190–5 constituted punishment.

The Government concedes, as it must, that the administrative sanction was a separate proceeding for the same offense under the requirements of *Halper, supra,* 490 U.S. 435, 109 S.Ct. 1892; *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).[3]

The gravamen of the Government's argument is that the Army's driving privileges suspension regulation is remedial, not punitive, and thus, the Army's suspension of a drunken driver's military base driving privileges for one year does not constitute punishment under the Double Jeopardy Clause.

Thus, the issue before this Court today is whether the one year administrative license suspension pursuant to Army Regulation 190–5 constitutes punishment, and as such, bars a second prosecution in the present criminal proceedings based on the same conduct which caused each defendant to be "sanctioned" by the Fort Belvoir Garrison Commander.

The Supreme Court has refused to engage in semantics with respect to whether a sanction constitutes punishment for double jeopardy purposes. The Court has noted that the labels of criminal or civil "are not of paramount importance." *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901. Rather, "[t]he notion of punishment, as we understand it, cuts across the division between the civil and the criminal law, and for the purpose of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads." *Id.* at 447–48, 109 S.Ct. at 1901.

In recognizing that the talismanic incantation of mere words cannot determine whether a civil sanction constitutes multiple punishments for double jeopardy purposes, the Supreme Court has set forth the following test: "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* at 448, 109 S.Ct. at 1902.

More recently, the Supreme Court has reaffirmed its definition of punishment as stated in *Halper.* The Court restated that the initial double jeopardy inquiry is whether the regulation is solely remedial or has deterrent or retributory characteristics. *See Austin,* 509 U.S. at ——, 113 S.Ct. at 2806 (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902) ("Fundamentally . . .' [a] civil sanction that cannot fairly be said solely to serve a remedial purpose but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term."); *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1945 (citing *Halper*) ("A defendant convicted and punished for an offense may not have a non-remedial civil penalty imposed upon him for the same offense in a separate proceeding.").

Consequently, the Supreme Court has made it clear that a civil sanction, designed even in part to deter or punish, constitutes punishment for double jeopardy purposes, regardless of whether it also has a remedial purpose. *See United States v. $405,089.23 in U.S. Currency,* 33 F.3d 1210, 1219 (9th Cir. 1994); *United States v. Hudson,* 14 F.3d 536, 540 (10th Cir.1994).

In the instant case, each defendant, after being arrested for DUI by the Fort Belvoir military police, was notified by letter that the Fort Belvoir Garrison Commander had suspended their privilege to operate a motor

---

0.10 percent blood alcohol by volume in violation of the law of the jurisdiction in which the vehicle is being operated if the jurisdiction imposes a suspension solely on the basis of BAC level.

Army Regulation 190–5, Section 2–5(a)–(c).

**3.** As the magistrate court correctly noted, the timing, content and nature of the Army Regula-

tion license suspension scheme mark it as a separate proceeding in relation to a subsequent prosecution. For instance, the two proceedings are instituted at different times before different tribunals, the individual whose license is suspended is not entitled to a jury trial or counsel, and the administrative hearing is civil, not criminal, in nature.

vehicle on all military installations for one year pursuant to Army regulation 190–5. The notice letter stated that the suspension was "administrative" in nature and informed each defendant that he could request a hearing before the Installation Driving Privileges Review Board ("IDPRB") to determine if his driving privileges would be restored pending resolution of the criminal charge, by submitting a written request to the Provost Marshal Office within 10 days of receipt of the letter.

Further, the notice stated that each defendant could present evidence and witnesses, and be represented by counsel at the IDPRB, but only at his own expense.[4]

Moreover, driving privileges could be reinstated only upon request, regardless of the outcome of the pending criminal charges. The last sentence of the initial notice letter sent to the defendants stated that "[r]egardless of the outcome of your criminal case, the IDPRB has the authority to suspend your installation driving privileges."

Conceivably, each defendant could be acquitted of the pending criminal charges, and still lose their post driving privileges for one year under the lower evidentiary standard. In addition, even if either defendant is found not guilty or the charge is dismissed or reduced to an offense not amounting to driving under the influence of alcohol, each defendant will again be notified of the opportunity to request a hearing. The burden remains on the defendant to request a hearing within the allotted 10 working days.

Should either defendant be convicted of the pending charge of driving under the influence, the suspension of his post driving privileges automatically will become a revocation for a mandatory period of not less than one year. *See* Army Regulation 190–5, Section 2–5(3).

The Government argues that a regulatory scheme that mandates the administrative suspension of a driver's license upon the motorist's arrest for intoxicated driving is designed to further a state's compelling interest in highway safety by promptly removing drunken drivers from the road. *See Mackey v. Montrym*, 443 U.S. 1, 17–18, 99 S.Ct. 2612, 2620–21, 61 L.Ed.2d 321 (1979); *Delaware v. Prouse*, 440 U.S. 648, 658, 99 S.Ct. 1391, 1398, 59 L.Ed.2d 660 (1979). While this is undoubtedly true, the stated purpose, standing alone, of this type of regulatory scheme does not answer the question whether the suspension of one's driving privileges on all military posts for one year constitutes a punitive civil sanction.

As the Court recognized in *Halper*, what is relevant to "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly said to serve." *Id.* at 448, 109 S.Ct. at 1901. Realistically, any remedial purpose could be stated, but if the civil sanction's purpose cannot be fairly characterized as remedial, the sanction constitutes punishment for double jeopardy purposes.

The suspension of driving privileges pursuant to Army Regulation 190–5 cannot be fairly characterized as remedial. True, one of the regulation's purposes is to promptly remove drunk drivers from driving on military installations.[5] However, unlike the majority of state license suspension schemes upheld by other courts, none involve suspending an individual's license for one year based on a first offense. *See e.g., Tench v. Commonwealth*, 21 Va.App. 200, 462 S.E.2d

---

4. Neither defendant requested a hearing before the IDPRB within the allotted 10 day period. Had the defendants requested a hearing, the hearing officer would have determined whether they were engaged in intoxicated driving by a preponderance of the evidence. If the defendants were found to have been engaged in intoxicated driving by a preponderance of the evidence, Army Regulation 190–5, Section 2–10 mandates that post driving privileges be revoked for one year from the date of the original preliminary suspension.

5. Army Regulation 190–5, Section 1–5 identifies the following "Program Objectives":

    (a) Safe and efficient movement of personnel and vehicles;

    (b) Reduction of traffic deaths, injuries, and property damage from traffic accidents;

    (c) Integration of installation safety, engineering, legal, medical, and law resources into the installation traffic planning process; and

    (d) Removal of intoxicated drivers from installation roadways followed by the expeditious application of appropriate sanctions.

922 (Va.Ct.App.1995) (Seven day license suspension); *State v. Jones*, 340 Md. 235, 666 A.2d 128 (1995) (Maximum 45–day license suspension for first time offenders who consent to BAC test).

Moreover, each state license suspension scheme is directly related to the pending criminal charge for driving under the influence of alcohol or drugs. Thus, if the criminal charge is dismissed or reduced to an offense less than driving while intoxicated, or the defendant is acquitted, the license suspension is rescinded.[6] However, in the present case, Army regulation 190–5 imposes its own brand of punishment, without paying legitimate deference to the outcome of the pending criminal charge.

The most reasoned analysis of Army Regulation 190–5 is that it most closely characterizes the twin aims of punishment, that is, retribution and deterrence. As the Court in *Halper* stated, " 'retribution and deterrence are not legitimate nonpunitive governmental objectives.' " *Id.* at 448, 109 S.Ct. at 1902 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 1874 n. 20, 60 L.Ed.2d 447 (1979)).

Additionally, the Court in *Halper* noted "that in determining whether a particular civil sanction constitutes punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id.* at 447, n. 7, 109 S.Ct. at 1901 n. 7. Even if the Army intended to serve only a remedial purpose, its license suspension scheme contains significantly greater punitive aspects that do not support a remedial purpose.

Clearly, the purpose actually served by Army Regulation 190–5 seeks to deter individuals from operating motor vehicles on all military installations and to immediately punish those that do, regardless of the outcome of the individual's criminal case.

Without question, a regulation which attempts to protect the public from drunk drivers has a beneficial purpose in protecting the public. However, in setting the length of suspension at one year effective on all military installations, the Army divorces itself from the regulation's remedial purpose, and replaces it with significant punitive aspects that constitute punishment for double jeopardy purposes. Due to the fact that the defendants' criminal prosecutions followed their license suspensions, the significant punitive aspects of the license suspension cannot now be separated from the remedial aspects.

### III.

■ The one year administrative license suspension pursuant to Army regulation 190–5 constitutes punishment, and as such, bars a second prosecution in the present criminal proceedings based on the same conduct which caused each defendant to be sanctioned by the Fort Belvoir Garrison Commander.

Accordingly, the magistrate court's judgments in *United States v. Prasit Imngren* and *United States v. Kenneth Johnson*, holding that a suspension pursuant to Army Regulation 190–5 is punishment for double jeopardy purposes because its actual effects are those of retribution and deterrence, are **AFFIRMED.**

An appropriate Order shall issue.

### *ORDER*

For the reasons put forth in the accompanying Memorandum Opinion, it is accordingly **ORDERED:**

(1) that the magistrate court's dismissal of Count One charging Kenneth Johnson with operating a motor vehicle under the influence of alcohol after having been convicted of driving while intoxicated within five years, in violation of 18 U.S.C. § 13, assimilating Va. Code 18.2–266(ii), is hereby **AFFIRMED;** and

(2) that the magistrate court's dismissal of Count One charging Prasit Imngren with

---

**6.** Significantly, the magistrate court pointed out that with respect to Defendant Imngren, who refused to take a breath test, the suspension of his driving privileges upon acquittal in federal court will not be vacated by the Fort Belvoir Garrison Commander. Therefore, unlike Defendant Johnson, Defendant Imngren is not entitled to a hearing of any kind if he is acquitted in federal court. *See* Army Regulation 190–5, Section 2–10a.

operating under the influence of alcohol in violation of 18 U.S.C. § 13, assimilating Va. Code 18.2–266(ii), is hereby **AFFIRMED.**