**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Prasit IMNGREN, Defendant–Appellee.**

**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Kenneth JOHNSON, Defendant–Appellee.**

Nos. 96–4083, 96–4084.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 26, 1996.

Decided Oct. 25, 1996.

Before WILKINS, WILLIAMS, and MOTZ, Circuit Judges.

Reversed and remanded by published opinion. Judge WILLIAMS wrote the opinion, in which Judge WILKINS and Judge MOTZ joined.

**ARGUED:** Thomas Ernest Booth, United States Department of Justice, Washington, DC, for Appellant. D. Curtis Danielson, Alexandria, VA, for Appellees. **ON BRIEF:** Helen F. Fahey, United States Attorney, Nash W. Schott, Assistant United States Attorney, Cpt. Scott A. Lawson, Assistant United States Attorney, United States Department of Justice, Washington, DC, for Appellant.

**OPINION**

WILLIAMS, Circuit Judge:

Prasit Imngren and Kenneth Johnson were arrested in separate incidents for driving under the influence of alcohol (DUI) on Fort Belvoir, a federal military installation located in Virginia. Pursuant to military regulations, the Fort Belvoir Garrison Commander suspended their driving privileges for one year. Thereafter, the United States charged Imngren and Johnson with DUI in violation of 18 U.S.C.A. § 13 (West Supp. 1996) and Va.Code Ann. § 18.2–266(ii) (Michie 1996). The United States District Court for the Eastern District of Virginia dismissed the DUI charges of each defendant, holding that the suspension of their driving privileges for the same offense in a prior proceeding constituted prior punishment under the Double Jeopardy Clause of the Fifth Amendment. Finding that the district court erred, we reverse.

I.

The official policy of the Department of the Army is to suspend or revoke for one year the driving privileges of a motorist who has been arrested for driving under the influence of alcohol on a military installation. *See Motor Vehicle Traffic Supervision*, 32 C.F.R.

§ 634.10(a)(3), (b)(3) (1996). This policy is implemented by Army Regulation 190–5 (1988).

On January 10, 1995, a military policeman stopped Johnson within the boundaries of Fort Belvoir for driving 63 miles per hour in a posted 35–mile–per–hour zone. Johnson, a civilian, was given a breath alcohol content (BAC) test that showed a BAC of 0.07% by volume. Five days later the Fort Belvoir Garrison Commander, acting pursuant to Army Regulation 190–5, suspended Johnson's driving privileges on Fort Belvoir.[1]

On March 23, 1995, a military policeman stopped Imngren for a traffic violation on Fort Belvoir. Suspecting that Imngren was intoxicated, the military policeman asked him to take a BAC test. Imngren refused. As a result, Imngren's driving privileges were suspended for one year on all federal lands comprising the "special maritime and territorial jurisdiction of the United States."[2]

Subsequently, the United States charged each defendant with DUI in violation of 18 U.S.C.A. § 13 (West Supp.1996) and Va.Code Ann. § 18.2–266(ii) (Michie 1996). In addition, the United States charged Johnson with reckless driving in violation of 18 U.S.C.A. § 13 and Va.Code Ann. § 46.2–862(i) (Michie 1996), and driving on a suspended license in violation of 18 U.S.C.A. § 13 and Va.Code Ann. § 46.2–301 (Michie 1996). Imngren was additionally charged with refusing to take a BAC test in violation of 18 U.S.C.A. § 3118(b) (West Supp.1996), and failing to drive in a single lane in violation of 32 C.F.R. § 634.25(f) (1996) and Va.Code Ann. § 46.2–804 (Michie 1996).

A federal magistrate judge dismissed the criminal charges against each defendant on the ground that the previous suspension of their driving privileges constituted a prior punishment under the Double Jeopardy Clause. In a consolidated appeal, the district court affirmed the magistrate judge's dis-missal. *See United States v. Imngren,* 914 F.Supp. 1326 (E.D.Va.1995). This appeal followed.

## II.

At issue in this case is whether the Double Jeopardy Clause is violated when a motorist is criminally charged with DUI after having had his driving privileges suspended for the same offense in a prior proceeding. We review de novo the legal questions raised by this appeal. *See Thomas v. Comm'r of the IRS,* 62 F.3d 97, 99 (4th Cir.1995) (stating that appellate courts should undertake de novo review when determining whether the Fifth Amendment's Double Jeopardy Clause has been violated).

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Among other things, the Clause protects individuals against suffering multiple punishments for the same offense. *See United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969)).

Although it was once thought that a sanction imposed in a "civil" proceeding could never constitute "punishment" for double jeopardy purposes, that is no longer the case. *See United States v. Halper,* 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989) (noting that "[i]t is commonly understood that civil proceedings may advance punitive as well as remedial goals"). Rather, double jeopardy analysis should properly focus on whether the sanction is punitive or remedial in nature. *See id.; Thomas,* 62 F.3d at 100. As a result, resolution of this case turns on whether a one-year suspension of driving privileges, even though imposed in

1. The letter to Johnson stating that his suspension "applies at all military installations" is incorrect. Pursuant to Army Regulation 190–5, § 2–5 (1988), a military garrison commander can suspend a motorist's driving privileges only "on the installation" he commands.

2. Under 18 U.S.C.A. § 3118(b) (West Supp. 1996), a motorist that refuses to take a BAC test "shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States...." These lands are defined by 18 U.S.C.A. § 7 (West 1969 & Supp.1996) and include United States military installations.

a civil proceeding, is properly characterized as punitive or remedial in nature.

The district court primarily relied on *Halper*, 490 U.S. at 435, 109 S.Ct. at 1894–95, *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), in holding that the suspension of driving privileges for one year is punitive in nature. *See Imngren*, 914 F.Supp. at 1328–30. On appeal, Imngren and Johnson base their arguments on these same three cases. (Appellee's Br. at 9, 18–22.) However, after the district court rendered its decision and the parties filed their briefs with this court, the Supreme Court in *United States v. Ursery*, — U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), stated that a number of lower courts had "misread *Halper, Austin,* and *Kurth Ranch*," in deciding double jeopardy cases.[3] *Id.* at ——, 116 S.Ct. at 2144. Without the benefit of the Court's analysis in *Ursery*, the district court, as well as Imngren and Johnson, similarly misread the narrow holdings of those three cases.

In *Halper*, the defendant was convicted on sixty-five counts of violating the criminal false claims statute. *See* 18 U.S.C.A. § 287 (West Supp.1996). Halper received a two-year prison term and a $5,000 fine. Despite Halper's criminal punishments, the Government filed a separate civil action under the False Claims Act, 31 U.S.C.A. §§ 3729–3731 (West Supp.1996), to recover a $2,000 penalty for each of the sixty-five counts of fraud. The Supreme Court found this $130,000 civil penalty, which was "overwhelmingly disproportionate" to the government's actual damages of $585, to be punitive. Because the Double Jeopardy Clause prohibits the imposition of multiple punishments, the Court held that the Government's civil action was barred. *See Halper* 490 U.S. at 449, 109 S.Ct. at 1902.

*Ursery* makes clear that *Halper* "was limited to the context of civil penalties." *Ursery*, — U.S. at ——, 116 S.Ct. at 2144. "Civil penalties," the Court noted, "are designed as a rough form of 'liquidated damages' for the harms suffered by the Government as a result of a defendant's conduct." *Id.* at ——, 116 S.Ct. at 2145. Unlike the Sixth and Ninth Circuits, this Circuit in *United States v. Cullen*, 979 F.2d 992 (4th Cir.1992), correctly recognized that *Halper* was limited to civil penalty cases. In *Cullen*, we noted that:

> *Halper* involved a civil penalty intended to substitute for damages suffered by the government for the fraudulent acts committed upon it. The remedial purpose of that penalty was one of compensation, and the amount sought by the government overwhelmed any realistic estimate of the government's pecuniary loss. Here, by contrast, the government seeks the forfeiture of the Cullens' building not to compensate itself for any costs of investigation or prosecution, but to remove what had become a harmful instrumentality in the hands of the Cullens.

*Id.* at 995.

Like the sanctions in *Cullen* and *Ursery*, the sanction at issue in this case was not designed to compensate the government for its costs of investigation or prosecution. Here, as in *Cullen*, the purpose of the sanction was "to remove what had become a harmful instrumentality in the hands of [Imngren and Johnson]." *Cullen*, 979 F.2d at 995. Therefore, the *Halper* analysis upon which the district court relied is not applicable in this case. The Supreme Court expressly acknowledged that such analysis would be the rule only "for the rare case, . . .

---

**3.** Relying on *Halper, Austin,* and *Kurth Ranch,* the Sixth and Ninth Circuits had held that the Double Jeopardy Clause prohibited the Government from punishing a defendant for a criminal offense and then taking his property for that same offense in a separate civil forfeiture proceeding. *See United States v. Ursery,* 59 F.3d 568, 576 (6th Cir.1995); *United States v. $405,089.23 in United States Currency,* 33 F.3d 1210, 1219 (9th Cir.1994). In a consolidated appeal, the *Ursery* Court disagreed, finding that civil forfeitures generally "do not constitute 'punishment' for purposes of the Double Jeopardy Clause." *United States v. Ursery,* — U.S. ——, ——, 116 S.Ct. 2135, 2138, 135 L.Ed.2d 549 (1996). In so holding, the Court specifically noted that both the Sixth and Ninth Circuits had "misread *Halper, Austin,* and *Kurth Ranch." Id.* at ——, 116 S.Ct. at 2144.

where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Halper,* 490 U.S. at 449–50, 109 S.Ct. at 1902.

The district court also relied on the Court's analysis in *Austin* and *Kurth Ranch* in holding that the suspension of a motorist's driving privileges for one year is punitive. In particular, the district court concluded that a sanction is punitive if it is not "solely remedial." *Imngren,* 914 F.Supp. at 1328 (citing *Austin,* 509 U.S. at 610, 113 S.Ct. at 2805–06; *Kurth Ranch,* 511 U.S. at ——, 114 S.Ct. at 1945). However, the "solely remedial" analysis is also inapplicable in this case. In *Ursery,* the Supreme Court recognized that a remedial sanction may have "certain punitive aspects." —— U.S. at ——, 116 S.Ct. at 2148. As the Court further noted:

> [I]t must be remembered [that *Austin* ] did not involve the Double Jeopardy Clause at all. *Austin* was decided solely under the Excessive Fines Clause of the Eighth Amendment, a constitutional provision which we never have understood as parallel to, or even related to, the Double Jeopardy Clause of the Fifth Amendment.

*Id.* at ——, 116 S.Ct. at 2146. In fact, the Court expressly declined "to import the analysis of *Austin* into [the Court's] double jeopardy jurisprudence." *Id.* at ——, 116 S.Ct. at 2147. Likewise, the Court noted that the narrow holding in *Kurth Ranch* was limited to "a tax proceeding under the Double Jeopardy Clause." *Id.*

Although the *Halper, Austin,* and *Kurth Ranch* analyses are not applicable in determining whether the suspension of a motorist's driving privileges is remedial or punitive, we find that the two-part test employed by the *Ursery* Court is. In fact, we recently used the *Ursery* analysis in holding that a four-year debarment from government contracting did not constitute "punishment" for Double Jeopardy purposes. *See United States v. Glymph,* 96 F.3d 722, 725 (4th Cir.1996). As originally outlined in *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), the test has two parts. First, the court should determine whether the govern-

ment intended the proceedings under Army Regulation 190–5 to be criminal or civil. Second, if the government intended the proceedings to be civil, the court should determine whether the sanction is so punitive in form and effect as to negate that intent. *See Ursery,* —— U.S. at —— – ——, 116 S.Ct. at 2147–48 (citing *United States v. 89 Firearms,* 465 U.S. at 354, 104 S.Ct. at 1100–01). In applying this two-part test in *Glymph,* we reviewed the "statute's stated purpose," and then examined "its actual effects to ascertain whether it served 'important nonpunitive goals.' " *Glymph,* 96 F.3d at 725.

■ In applying the *Ursery* analysis to this case, we turn first to the stated purpose of Army Regulation 190–5. We find that this regulation explicitly articulates remedial, nonpunitive purposes. These purposes include:

> a. Safe and efficient movement of personnel and vehicles.
>
> b. Reduction of traffic deaths, injuries, and property damage from traffic accidents . . . .
>
> c. Integration of installation safety, engineering, legal, medical, and law enforcement resources into the installation traffic planning process.
>
> d. Removal of intoxicated drivers from installation roadways followed by the expeditious application of appropriate sanctions.

Army Regulation 190–5, § 1–5 (1988). Equally clear is the government's intent that the procedure and the sanction be civil and administrative. As Imngren and Johnson concede:

> Not only is AR 190–5 [labeled civil], but the procedures set out in AR 190–5 are civil or administrative. For instance, the Notification Letter to defendants states that "this suspension is administrative in nature." In addition, AR 190–5 provides that the hearing officer determines by a preponderance of the evidence whether the motorist was engaged in intoxicated driving. By creating such distinctly civil procedures, the government has indicated

clearly its intent to create a civil or administrative sanction.

(Appellee's Br. at 21–22.)

Turning to the second factor the Court enunciated in *Ursery*, we find that the suspension of a motorist's driving privileges is not so punitive in form and effect as to negate the remedial intent of the sanction. Imngren and Johnson's contentions to the contrary are without merit. For example, they contend that, at least in part, the one-year suspension of their driving privileges is punitive because it promotes one of the traditional aims of punishment, deterrence. *See Imngren*, 914 F.Supp. at 1330. However, the Supreme Court has held that deterrence can serve legitimate nonpunitive goals. *See, e.g., Ursery*, —— U.S. at ——, 116 S.Ct. at 2149 (stating that the Court has long held that deterrence "may serve civil as well as criminal goals"); *Bennis v. Michigan*, —— U.S. ——, ——, 116 S.Ct. 994, 1000, 134 L.Ed.2d 68 (1996) (holding that forfeiture "serves a deterrent purpose distinct from any punitive purpose"). Consequently, the argument that suspending a motorist's driving privileges is punitive because some element of deterrence is involved is without merit.

■ Imngren and Johnson also argue that the one-year suspension is punitive because it is much longer than suspension schemes upheld by other courts. *Imngren*, 914 F.Supp. at 1329–30. However, if a civil sanction serves a remedial purpose, the duration of the sanction does not necessarily make it punishment. *See, e.g., Glymph*, 96 F.3d at 725 (four-year debarment from government contracting was remedial); *United States v. Stoller*, 78 F.3d 710 (1st Cir.1996) (indefinite debarment order imposed by the FDIC was remedial); *United States v. Furlett*, 974 F.2d 839 (7th Cir.1992) (total prohibition on commodities market trading was remedial); *United States v. Bizzell*, 921 F.2d 263, 265–66 (10th Cir.1990) (twenty-four month suspension from participation in a federal housing program was remedial).

In any event, it is misleading to compare a one-year suspension of driving privileges on all federal lands under the special maritime and territorial jurisdiction of the United States to a 90–day suspension on all state highways. Such a comparison ignores the fact that the territorial scope of a state suspension is much broader than the territorial scope of Army Regulation 190–5 and 18 U.S.C.A. § 3118(b). In fact, despite their suspensions, Imngren and Johnson may still drive on most of the roads in the United States. This would not be the case had the state suspended their licenses.

In addition, the district court erred in comparing the one-year suspension to state suspensions for first-time offenders. *See Imngren*, 914 F.Supp. at 1329. Johnson is a repeat offender with a prior DUI conviction. Imngren refused to submit to a BAC test. Because these types of offenders potentially pose a greater threat to highway safety, states often impose longer driving suspensions in both of these situations. *See, e.g.,* Kan. Stat. Ann. § 8–1001(f)(1)(D) (Supp. 1994) (one-year suspension for refusing to take a BAC test); *State v. Boehler*, 542 N.W.2d 745 (N.D.1996) (one-year suspension for repeat offenders). Consequently, the argument that suspending a motorist's driving privileges is punitive because of the duration of the suspension is without merit.

Finally, Imngren and Johnson contend that suspending a motorist's driving privileges is punitive because the behavior to which the suspension applies is already a crime. As the Court noted in *Ursery*, simply because a sanction is linked to an activity that is also criminal "is insufficient to render the [sanction] punitive." *See* —— U.S. at ——, 116 S.Ct. at 2149. It is well settled that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938).

■ The suspension of driving privileges is not primarily an act of punishment; rather, suspension promotes public safety by removing from the highways motorists who have shown a tendency to drive under the influence of alcohol. *See Mackey v. Montrym*, 443 U.S. 1, 17–18, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321 (1979) (upholding statute mandating suspension of a driver's license when the licensee refuses to take a BAC

because of the "paramount interest the Commonwealth has in preserving the safety of its public highways"). Further, sanctions promoting public safety are usually considered remedial. *See, e.g., United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (pretrial detention held not to be punitive because "preventing danger to the community is a legitimate regulatory goal"). This is true even in double jeopardy cases where the punitive/remedial distinction is dispositive. *See 89 Firearms,* 465 U.S. at 364, 104 S.Ct. at 1106 (promoting public safety by regulating "the widespread traffic in firearms" is "more remedial than punitive"); *Cullen,* 979 F.2d at 994 (forfeiture "of an instrument of the offense is not primarily an act of punishment; rather, forfeiture protects the community from the threat of continued drug dealing"). Because sanctions promoting public safety are typically considered remedial, we hold that suspending a motorist's driving privileges is not "punishment" for Double Jeopardy purposes.[4] *See also Allen v. Attorney General of State of Maine,* 80 F.3d 569, 577 (1st Cir.1996) (finding that a 90–day suspension of driving privileges was remedial because it "represent[ed] a reasonable effort to protect the public from motorists who have demonstrated a dangerous propensity to drink before they drive").

### III.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to the district court for proceedings consistent with this opinion.

*REVERSED AND REMANDED*

---

4. The fact that Imngren and Johnson have suffered as a result of having their driving licenses suspended is of no import, for "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even reme-dial sanctions carry the 'sting of punishment.'" *Kurth Ranch,* 511 U.S. at —— n. 14, 114 S.Ct. at 1945 n. 14 (quoting *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7).