935 P.2d 1334 (1997)
131 Wash.2d 853
The STATE of Washington, Petitioner,
v.
Doy Lee McCLENDON, Gil Crosby, Sally Parrish, Frank Sayre, Richard Triquart, Stephen Stark, Brian Hayton and Mark Booth, Respondents.
No. 63066-6.
Supreme Court of Washington, En Banc.
Argued January 18, 1996.
Decided May 1, 1997.
*1336 Russell Hauge, Kitsap County Prosecutor, Jeffrey Jahns, Deputy, Pamela Loginsky, Deputy, Port Orchard, Christine Gregoire, Attorney General, James Schmid, Asst. Attorney General, Seattle, amicus curiae on behalf of Washington Association of Prosecuting Attorneys and Department of Licensing.
James Kaufman, Whitman County Prosecutor, Colfax, for Petitioner.
Nuxoll, Libey & Ensley, Timothy Esser, Michael J. Pettit, Pullman, for Respondents.
*1335 SMITH, Justice.
The parties and a judge of the Whitman County Superior Court jointly seek review of a Whitman County District Court decision granting the respondents' motion to dismiss charges of driving while under the influence of intoxicating liquor in violation of RCW 46.61.502. We granted review. We reverse and remand for trial.

QUESTION PRESENTED
The sole question presented in this case is whether it is unconstitutional double jeopardy for the State of Washington to prosecute respondents for violation of RCW 46.61.502, driving a vehicle while under the influence of intoxicating liquor, when the Department of Licensing has previously issued each respondent a probationary license after test results showed each had a breath alcohol level of .10 percent or higher.

STATEMENT OF FACTS
The cases against all eight respondents were dismissed by the Whitman County District Court, the Honorable David Frazier, on May 1, 1995. On May 9, 1995 the State of Washington appealed the cases to the Whitman County Superior Court. The judge, the Honorable Wallis W. Friel, and all parties asked this court for direct review. We granted review of the consolidated cases on October 5, 1995.
The eight respondents were initially charged in the Whitman County District Court by the Whitman County Prosecuting Attorney for violations of RCW 46.61.502, driving while under the influence of intoxicating liquor. In connection with the State's appeal, the parties on June 26, 1995 filed in the Whitman County Superior Court an "Agreed Narrative Report of Proceedings" dated June 16, 1995, which states:
[Respondents] Doy L. McClendon, Gil Crosby, Sally Parrish, Frank Sayre, Richard Triquart, Stephen Stark, Brian Hayton and Mark Booth [were] arrested for suspicion of violating RCW 46.61.502 on 12/9/94, 11/19/94, 12/2/94, 1/31/95, 12/18/94, 2/3/95, 2/9/95 and 3/5/95 [respectively]. Each defendant submitted to a BAC Datamaster Verifier test in compliance with RCW 46.20.308 and all relevant Washington Administrative Code provisions. Each defendant registered a breath test result of .10 or higher. All defendants [were] issued temporary licenses and advised of their right to an administrative hearing pursuant to [RCW] 46.20.365. And, all defendants were issued probationary licenses as a result of their performances on the breath test.
Subsequent to the issuance of the probationary licenses the Whitman County Prosecutor's *1337 office initiated criminal actions in the Whitman County District Court for alleged violations of RCW 46.61.502 [based on] the same conduct. On February 16, 1995, Defense's Motion to Dismiss for Violation of Double Jeopardy was filed. On February 21, 1995, the State's response was filed. Argument on this issue was heard by Judge [David] Frazier on March 3 and March 8, 1995. Judge Frazier reserved ruling on the matter. On April 17, 1995, Judge Frazier ruled in favor of the State finding that subjecting a defendant to a civil proceeding which seeks imposition of a probationary driver's license did not constitute punishment. On April 18, 1995, defense counsel filed Defendant's Motion for Reconsideration. On April 27, 1995, Judge Frazier reversed his decision of April 17, 1995, ruling in favor of the defense and citing State v. Calle, 125 Wash.2d 769 [888 P.2d 155] (1995), but reserved ruling on the appropriate remedy. On May 1, 1995, over the objections of the State, on the ground of lack of notice, the above-entitled cases [were] consolidated and Findings of Fact and Conclusions of Law were entered granting the defense Motions to dismiss. On May 9, 1995, the State [Appellant] filed a timely Notice of Appeal.
The Findings of Fact and Conclusions of Law entered by the District Court on May 1, 1995 stated:

FINDINGS OF FACT
1. The Defendant was arrested on suspicion of DUI. He/She agreed to take a breath test which registered .10 or above. Based on these facts, the arresting officer provided to the Washington State Department of Licensing a Report of Breath/ Blood Test. Pursuant to RCW 46.20.365 the arresting officer issued to the Defendant a temporary license and the Washington State Department of Licensing initiated administrative action which resulted in the imposition of a five year requirement that Defendant drive on a probationary license.
2. Based on the same facts/incident, the Whitman County Prosecuting Attorney's Office issued a criminal citation charging the Defendant with the crime of DUI pursuant to RCW 46.61.502.
BASED ON THESE FINDINGS, the court concludes:

CONCLUSIONS OF LAW
1. The State of Washington, based upon the same facts, has initiated two separate and distinct proceedings against the Defendant.
2. The criminal proceeding seeks to punish the Defendant.
3. The civil proceeding brought by the Department of Licensing which seeks imposition of a probationary license also constitutes punishment as that term is considered under double jeopardy analysis pursuant to State v. Calle, 125 Wash.2d 769 [888 P.2d 155] (1995).
THEREFORE, IT IS HEREBY ORDERED:
1. That the criminal charge of DUI filed herein is dismissed with prejudice.
2. Costs are not awarded, but shall abide the outcome of any appeal.
On July 28, 1995, Appellant, Respondents, and the Honorable Wallis W. Friel, Whitman County Superior Court, filed a joint request for direct review by the Supreme Court. We granted review on October 5, 1995. Amicus Curiae, Washington Association of Prosecuting Attorneys, filed a brief in support of Appellant State of Washington on October 26, 1995.

DISCUSSION

WAIVER OF RULES
Rule for Appeal of Decisions of Courts of Limited Jurisdiction (RALJ) 1.1(a) provides for review by the superior court of certain *1338 decisions of courts of limited jurisdiction, including final decisions of district courts.[1] There is no court rule or statute providing for certifying or transferring RALJ appeals from the superior court to the Supreme Court.
This Court's authority to make rules carries with it the inherent power to waive rules when justice requires it.[2] We have previously waived rules to promptly resolve issues relating to enforcement of laws governing driving while under the influence of intoxicating liquor or drugs.[3] Whether the double jeopardy clause prohibits the state from prosecuting respondents for driving under the influence of intoxicating liquor after the Department of Licensing issues them probationary licenses is a significant question which deserves prompt resolution and merits waiver of the rules for review by this Court. We therefore waive the rule and accept these cases for direct review.

PROBATIONARY LICENSES AND 1995 LEGISLATIVE CHANGES
Because the Legislature in 1995 repealed or amended statutes relating to probationary licenses after these appeals were filed, we must first determine whether those changes affect this case.[4]
The Legislature created the new category of "probationary license" in the "1994 Omnibus Drunk Driving Act" (Act), which took effect July 1, 1994.[5] Under the Act the Department of Licensing (Department) issued probationary licenses to persons under certain circumstances, including those violating RCW 46.61.502[6] or RCW 46.61.504[7] who take a test showing a blood alcohol concentration of .10 or higher. Respondents were issued probationary licenses under those statutes.[8]
Under the 1994 Act, former RCW 46.61.5051 provided penalties for a person with a regular driver's license who was convicted under RCW 46.61.502 and RCW 46.61.504. Former RCW 46.61.5052 outlined penalties for a person with a probationary license who was convicted of violating those statutes. Under the statutes a person with a probationary license was subject to mandatory minimum penalties which were harsher than those imposed upon a person with a regular driver's license under similar circumstances. For example, a person with a probationary license who violated RCW 46.61.502(1)(a) or RCW 46.61.504(1)(a) because of a blood alcohol level of at least .10, but less than .15, was subject to imprisonment of at least seven days, but not more than a year; a fine of at least $500.00, but not more than $5,000.00; and suspension of *1339 that person's driver's license or permit for one year.[9] By comparison, a person holding a regular driver's license under similar circumstances, who had not been convicted of violating RCW 46.61.502 or RCW 46.61.504 within five years prior to the current violation, was subject to imprisonment for at least one day, but not more than a year; a fine of at least $350.00, but not more than $5,000.00; and suspension of that person's driver's license or permit for 90 days.[10]
The Legislature in 1995 repealed former RCW 46.61.5051 and former RCW 46.61.5052, effective September 1, 1995.[11] It then enacted RCW 46.61.5055, which outlines penalties for all persons convicted of violating RCW 46.61.502 or RCW 46.61.504, effective September 1, 1995.[12] Unlike former RCW 46.61.5052, RCW 46.61.5055 does not provide harsher mandatory minimum penalties for those holding probationary licenses than for those holding regular licenses under similar circumstances.[13]
One of respondents' primary arguments is that a probationary license is punishment under double jeopardy analysis because it subjects its holder to enhanced mandatory minimum penalties in the future if that person subsequently violates RCW 46.61.502 or RCW 46.61.504. The 1995 statute, RCW 46.61.5055, does not provide enhanced mandatory minimum penalties for persons holding probationary licenses. The 1995 statute would satisfactorily overcome respondents' argument on double jeopardy if it were applied retroactively. But we conclude it applies only prospectively.
A statute is presumed to apply prospectively unless it is remedial in nature or unless the Legislature provides for retroactive application.[14] A remedial statute is one which relates to practice, procedures and remedies and is applied retroactively when it does not affect a substantive or vested right.[15] "A `right' is a legal consequence deriving from certain facts, while a remedy is a procedure prescribed by law to enforce a right."[16] There is no legislative indication in the language or history of RCW 46.61.5055 that it is to be applied retroactively.[17] The presumption that RCW 46.61.5055 applies prospectively only is strengthened by the Legislature's use of only present and future tenses in the wording.[18] We conclude that RCW 46.61.5055 should not be applied retroactively, but applied prospectively only. Accordingly, other 1995 legislative changes to statutes relevant to this case also should not be applied retroactively.[19] We therefore focus our attention on the statutes in effect when Respondents were charged prior to the 1995 changes.
*1340 Because there are no disputed facts, we will consider only questions of law, which we review de novo.[20]

DOUBLE JEOPARDY
The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The double jeopardy clause protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.[21] All parties agree the issue here concerns protection against multiple punishment for the same offense.
The State contends issuance of probationary licenses was a permissible exercise of the State's police power, and not "punishment" contemplated under the double jeopardy clause of the Fifth Amendment to the United States Constitution and Washington Constitution, art. I, § 9.[22] Thus, the State claims the double jeopardy clause does not bar punishment or prosecution of respondents for driving while under the influence of intoxicating liquor.
Respondents contend a probationary license is punishment under the double jeopardy clause because it serves retributive and deterrent purposes and serves no remedial purpose. Respondents rely principally upon the United States Supreme Court case of United States v. Halper[23] and the cases following it to support this argument.

CIVIL SANCTIONS AS "PUNISHMENT"
The Supreme Court first decided when a civil penalty may be considered punishment under the double jeopardy clause in United States v. Halper.[24] The Court framed the issue in that case as "whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes `punishment' for the purpose of double jeopardy analysis."[25]
In Halper, the Supreme Court stated that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term."[26] Respondents rely upon this language to contend that a probationary license is punishment because it does not "solely" serve a remedial purpose.[27] But the Court later in Halper announced its explicit holding, which actually departed significantly from its earlier statement:
We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be *1341 characterized as remedial, but only as a deterrent or retribution.[[28]]
Other appellate courts have relied upon and distinguished the explicit holding in Halper from the earlier quoted statement from that same case[29] Under Halper, a probationary license would be considered punishment under double jeopardy analysis only if it "may not fairly be characterized as remedial, but only as a deterrent or retribution."[30]
Respondents claim a probationary license is retributive and serves as a deterrent because it potentially enhances mandatory minimum penalties for the holder who is convicted in the future of violating RCW 46.61.502 or RCW 46.61.504.[31] They argue probationary licenses have no remedial purpose. But former RCW 46.20.355 states that "[t]he probationary license shall enable the [Department of Licensing and officers] to determine that the person is on probationary status, including the period of that status for a violation of RCW 46.61.502 or 46.61.504...." Former RCW 46.20.355(4) confirms that probationary licenses serve a remedial purpose because they alert the Department and law enforcement officers to a person's probationary status. As recognized by the State, issuing a probationary license to a driver also informs that person that further violative conduct will not be tolerated.[32] Under that circumstance, issuance of a probationary license can fairly be characterized as remedial and does not serve retributive or deterrent purposes only.
The Supreme Court in Halper further explained and narrowed application of its decision by stating, "What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused."[33]
This case is neither rare nor exceptional. "Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage."[34] This is not a case where a "fixed penalty provision" subjected respondents to a "sanction over whelmingly disproportionate" to the damage they caused.[35] A probationary license is not a "sanction overwhelmingly disproportionate" to the danger a drunk driver represents on the public highways. The State correctly points out that a probationary license alone does not limit a person's privilege to drive, does not inevitably subject a person to imprisonment or monetary penalties, and does not cause a person to forfeit property.[36]
Respondents interpret the Halper decision too broadly. Halper applies to the "rare case" where a person is subject to a civil penalty "overwhelmingly disproportionate" to the damages that person caused. That circumstance is not present in this case. We conclude the Halper decision does not apply to the facts of this case.
*1342 Respondents also rely upon Montana v. Kurth Ranch[37] in arguing that issuance of probationary licenses is "punishment." At issue in that case was whether a drug tax imposed by the State of Montana could be characterized as punishment for double jeopardy purposes. The Supreme Court in that case recognized that Halper decided when a civil penalty might be "punishment" under double jeopardy analysis, but stated "[o]ur answer to that question does not decide the different question whether Montana's tax should be characterized as punishment."[38]
The Court in Kurth Ranch held Montana's tax was punishment, but did not rely upon Halper in reaching its decision. Recognizing that tax statutes serve a different purpose than civil penalties, the Court agreed Halper's method of determining whether the penalty was remedial or punitive "does not work in the case of a tax statute."[39] In reaching its decision, the Court looked at the particular facts and circumstances surrounding the Montana tax and compared it to similar taxes that were not considered "punishment" for double jeopardy purposes. In doing so, the Court noted that "neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment."[40] Noting the high but valid taxes on cigarettes and alcohol, which may also have a deterrent effect on its users, the Court further stated "[t]hus, while a high tax rate and deterrent purpose lend support to the characterization of the drug tax as punishment, these features ... do not necessarily render the tax punitive."[41] The Court distinguished the Montana drug tax from other similar taxes to conclude that the tax was "punishment" for double jeopardy purposes.
Any deterrent effect from issuance of probationary licenses in this case does not "automatically" identify it as a form of punishment nor necessarily make it punitive. Respondents argue probationary licenses are a form of punishment. But "whether a sanction constitutes punishment" is not determined from the defendant's perspective because "for the defendant even remedial sanctions carry the sting of punishment."[42]
Although the Court in Kurth Ranch did not rely upon Halper in reaching its decision, it did acknowledge Halper's holding that "a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not be fairly characterized as remedial, but only as a deterrent or retribution."[43]
Respondents rely not only upon expansive language in Halper, but also cite Austin v. United States[44]and United States v. $405,089.23 in U.S. Currency[45] to support their argument that a sanction not "solely remedial" is punishment. In Austin, decided before Kurth Ranch, the Supreme Court held that the Excessive Fines Clause applied to forfeiture procedures. As respondents argue in this case, the Court in Austin pointed to the "solely remedial" language in Halper in reaching its decision.[46] But Austin involved the Excessive Fines Clause, and did not purport *1343 to modify the explicit holding in Halper which has been more recently recognized in Kurth Ranch.
Under Halper, the purposes actually served by the sanction at issue must be assessed in determining whether a civil sanction is "punishment" under double jeopardy analysis.[47] The issuance of probationary licenses is punishment only if it can be characterized as serving solely retributive or deterrent purposes.[48] If their issuance may fairly be characterized as remedial and bears a rational relation to the government's remedial purpose, then it is not punishment for double jeopardy purposes.[49]
We conclude that issuance of probationary licenses in this case was remedial, comporting with the principles in Halper. It is true that a probationary license subjects its holder to enhanced minimum mandatory penalties, but that happens only if the person subsequently violates RCW 46.61.502 or RCW 46.61.504.[50] Although a probationary license subjects its holder to fees or potentially harsher minimum penalties, the sanction is rationally related to the government's goal of protecting the public. Probationary licenses may carry with them the "sting" of punishment, but that does not necessarily characterize them as "punishment" for double jeopardy purposes. The Court in Halper recognized the government is "entitled to rough remedial justice" in determining whether a sanction could be fairly characterized as remedial or solely punitive for double jeopardy purposes.[51]
Amicus Curiae, Washington Association of Prosecuting Attorneys, referring to Kurth Ranch, suggests this Court should look to the historical background of administrative licensing proceedings to determine whether issuance of probationary licenses in this state constitutes "punishment." The State correctly points out that administrative licensing proceedings in this state have long been considered remedial, and not punitive. Respondents also acknowledge that license revocation or suspension is "clearly remedial, at least in part" because it removes dangerous drivers from the road to the benefit of the public.[52] Revocation of a driver's license is not "punishment" under the double jeopardy clause, but is a permissive exercise of the State's police power to protect users of the public higways.[53] Under Halper and the cases following it, a number of state appellate courts have held that revocation or suspension of driver's licenses is not "punishment" for double jeopardy purposes.[54]
Issuance of probationary licenses is a procedure far short of the more drastic ones of suspension or revocation of licenses. It ultimately protects users of public highways, and thus, under Halper, is fairly characterized as remedial and not solely retributive or deterrent.

*1344 CONCLUSION

We conclude that administrative issuance of probationary licenses is not punishment under the double jeopardy clause. We also conclude that RCW 46.61.502 is constitutional. We reverse the decision of the Whitman County District Court granting respondents' motion to dismiss charges of driving while under the influence of intoxicating liquor in violation of the statute and remand for trial in the Whitman County District Court.
DOLLIVER, J., concurs.
TALMADGE, Justice, (concurring).
While I agree with the majority opinion, I do not believe we need to rely on the rather unpredictable course of the United States Supreme Court's double jeopardy jurisprudence to reach the conclusion in the majority opinion.[1] The present case rises and falls on a single question: is the license action punishment? If it is punishment, jeopardy attaches.
Jurisdictions that have considered the question have overwhelmingly held licensure actions to be remedial, not punishment: Thompson v. State, 896 F.Supp. 220 (D.Me. 1995) (suspension of license under Maine statute was not punishment under double jeopardy clause and did not bar subsequent DUI[2] prosecution); State v. Zerkel, 900 P.2d 744 (Alaska App.1995) (revocation of driver's license for refusing to submit to blood alcohol test or having test results of .10% or higher is remedial for double jeopardy purposes, even though revocation plays a role in deterrence); Marzolf v. Superior Court, 185 Ariz. 144, 912 P.2d 1373 (1995) (administrative license suspension for excessive blood alcohol content does not constitute punishment under double jeopardy clause); Baldwin v. Department of Motor Vehicles, 35 Cal.App.4th 1630, 42 Cal.Rptr.2d 422 (1995) (mandatory revocation of driver's license subsequent to criminal punishment for third DUI conviction did not violate motorist's double jeopardy protection against multiple punishments); People v. Olson, 921 P.2d 51 (Colo.App.1996) (prior administrative driver's license revocation for failure to submit to breath or blood alcohol test did not constitute punishment for purposes of double jeopardy clause); State v. Hickam, 235 Conn. 614, 668 A.2d 1321 (1995) (90-day administrative license suspension had legitimate remedial purpose of promoting public safety and was rationally related to that purpose, and thus defendant's subsequent criminal prosecution was not barred by double jeopardy principles), cert. denied, ___ U.S. ___, 116 S.Ct. 1851, 134 L.Ed.2d 951 (1996); Davidson v. MacKinnon, 656 So.2d 223 (Fla.Dist.Ct.App.) (administrative remedy of suspension of driver's license for DUI or other related behavior is primarily for purpose of enhancing safe driving on public highways and does not bar subsequent criminal prosecution for DUI), review denied, 662 So.2d 931 (1995); State v. Murray, 644 So.2d 533 (Fla.Dist.Ct.App.1994) (driver's license suspension did not preclude DUI prosecution on double jeopardy grounds); Gomez v. State, 621 So.2d 578 (Fla.Dist.Ct.App.1993) (no *1345 double jeopardy violation was involved in prosecution of DUI charge after defendant's driver's license was seized because of same conduct); Martinez v. State, 221 Ga.App. 483, 471 S.E.2d 551 (1996) (administrative license suspension not punishment for double jeopardy purposes); State v. Higa, 79 Hawai'i 1, 897 P.2d 928 (1995) (acquittal was immaterial for double jeopardy purposes inasmuch as function of Administrative Drivers License Revocation Office proceeding was purely remedial and nonpunitive); State v. Talavera, 127 Idaho 700, 905 P.2d 633 (1995) (administrative suspension of defendant's driver's license did not constitute punishment under Double Jeopardy Clause so as to foreclose subsequent prosecution of defendant for DUI arising out of same incident); People v. Eck, 279 Ill.App.3d 541, 216 Ill.Dec. 219, 664 N.E.2d 1147 (1996) (statutory summary suspension of driving privileges does not constitute punishment for double jeopardy purposes); Schrefler v. State, 660 N.E.2d 585 (Ind.App.1996) (administrative suspension of driving privileges was not punishment); State v. Kocher, 542 N.W.2d 556 (Iowa 1996) (double jeopardy clause does not bar prosecution of defendant in DUI case if defendant's license has previously been suspended through administrative proceedings); State v. Savard, 659 A.2d 1265 (Me.1995) (revocation or suspension of driver's license is not punishment, and, thus, prosecution for DUI following administrative suspension of license for DUI is not barred by state and federal double jeopardy clauses); State v. Mertz, 258 Kan. 745, 907 P.2d 847 (1995) (double jeopardy did not bar prosecution of defendant for driving under the influence of alcohol after defendant's driver's license was administratively suspended); Leduc v. Commonwealth, 421 Mass. 433, 657 N.E.2d 755 (1995) (administrative suspension of driver's license for taking and failing breathalyzer test is not punishment for double jeopardy purposes); Johnson v. State, 95 Md.App. 561, 622 A.2d 199 (1993) (administrative sanction previously imposed on motorist based on same underlying activity, consisting of two-month suspension of his driving privileges, did not rise to level of punishment or penalty sufficient to trigger double jeopardy concerns when motorist was subsequently prosecuted for vehicular offenses); State v. Jones, 340 Md. 235, 666 A.2d 128 (1995) (temporary administrative suspension of driver's license does not constitute punishment under the law of double jeopardy found in the United States Constitution or under Maryland common law), cert. denied, ___ U.S. ___, 116 S.Ct. 1265, 134 L.Ed.2d 213 (1996); City of New Richland v. VanEngelenburg, 543 N.W.2d 634 (Minn.1996) (civil driver's license revocation for DUI was not punishment for double jeopardy purposes); State v. Hanson, 543 N.W.2d 84 (Minn.1996) (civil driver's license revocation pursuant to implied consent statute for driving under the influence did not bar subsequent criminal prosecution for same conduct under double jeopardy principles); State v. Mayo, 915 S.W.2d 758 (Mo. 1996) (suspension or revocation of driver's license for driving with unlawful blood alcohol content was not punishment implicating double jeopardy clause), cert. denied, ___ U.S. ___, 116 S.Ct. 61, ___ L.Ed.2d 23 (1996); State v. Young, 249 Neb. 539, 544 N.W.2d 808 (1996) (administrative license revocation primarily served remedial purpose and thus did not impose punishment for double jeopardy purposes); State v. Hansen, 249 Neb. 177, 542 N.W.2d 424 (1996) (double jeopardy clauses did not bar DUI prosecution after driver's license had been administratively revoked for failure of alcohol breath test), cert. denied, ___ U.S. ___, 116 S.Ct. 2509, 135 L.Ed.2d 198 (1996); State v. Cassady, 140 N.H. 46, 662 A.2d 955 (1995) (previous administrative review hearing for suspension of driver's license did not bar prosecution of defendant for driving under the influence of liquor, for double jeopardy purposes); State ex rel. Schwartz v. Kennedy, 120 N.M. 619, 904 P.2d 1044 (N.M.1995); State v. Oliver, 343 N.C. 202, 470 S.E.2d 16 (N.C.1996) (ten-day driver's license revocation and $50 license restoration fee do not constitute punishment and do not bar subsequent DUI prosecution under double jeopardy clause); State v. Zimmerman, 539 N.W.2d 49 (N.D.1995) (driver's license revocation *1346 under Implied Consent Act is not punishment for purposes of double jeopardy clause); State v. Gustafson, 76 Ohio St.3d 425, 668 N.E.2d 435 (1996) (civil sanction imposed as a result of administrative license suspension proceeding was not punishment for double jeopardy purposes so long as length of suspension did not extend beyond conviction and sentencing); Kane v. State, 915 P.2d 932 (Okla.Crim.App.1996) (administrative revocation of defendant's driver's license under implied consent statutes did not constitute punishment for double jeopardy purposes); State v. Phillips, 138 Or.App. 468, 909 P.2d 882 (administrative suspension of driver's license for driving under influence of intoxicants does not constitute punishment for double jeopardy purposes), review denied, 323 Or. 114, 913 P.2d 1384 (1996); Martin v. Commonwealth, 672 A.2d 397 (Pa. Commw.Ct.1996) (automatic suspension of driver's license as consequence of drug conviction does not violate double jeopardy clause); State v. Talavera, 127 Idaho 700, 905 P.2d 633 (1995) (administrative suspension of defendant's driver's license did not constitute punishment for double jeopardy purposes foreclosing subsequent prosecution for DUI arising out of same incident); Ex parte Vasquez, 918 S.W.2d 73 (Tex.App. 1996) (DUI prosecution following administrative license suspension for refusing to submit to breath test does not violate the protection against double jeopardy); State v. Arbon, 909 P.2d 1270 (Utah App.) (administrative license suspensions for DUI did not constitute punishment for double jeopardy purposes), cert. denied, 916 P.2d 909 (1996); Tench v. Commonwealth, 21 Va.App. 200, 462 S.E.2d 922 (1995) (automatic suspension of defendant's driver's license for failing breath test did not constitute punishment for double jeopardy purposes); State v. O'Brien, 158 Vt. 275, 609 A.2d 981 (1992) (administrative suspension proceeding is not criminal in nature).[3]But see United States v. Imngren, 914 F.Supp. 1326 (E.D.Va.1995) (administrative suspension of driver's license for one year on all military installations constitutes punishment for double jeopardy purposes); State v. Ackrouche, 70 Ohio Misc.2d 34, 650 N.E.2d 535 (1995) (Franklin County Municipal Court holds because administrative license suspension was punishment imposed in separate proceeding for same conduct which was subject of prosecution pursuant to drunk driving law, double jeopardy clauses of United States and Ohio Constitutions barred criminal prosecution on that charge).
Even if one were to disagree, as the dissent does, with the multitudes of our colleagues nationwide who have held drivers license revocations and suspensions are not punishment for double jeopardy purposes, the probationary status complained of in the present case imposes no immediate sanction whatsoever on the licensee, and cannot possibly be considered punishment.[4] Placing a driver on probationary status is less onerous than the revocations and suspensions other jurisdictions hold not to be punishment.[5] Accordingly, the challenged action in this case is not punishment.
GUY, J., and DURHAM, C.J., concur.
*1347 ALEXANDER, Justice, (concurring in dissent).
I concur in the dissent. I do so because I agree with Justice Sanders that the issuance of a probationary driver's license, pursuant to former RCW 46.61.5052, has no remedial purpose. Its only purpose, as the dissent observes, is punitive in that it has the effect of increasing the punishment of the probationary licensee on his or her subsequent offense for DUI. Dissenting op. at 1347-49. In essence, the probationary license is treated as a prior DUI conviction whether or not the holder of that license is ultimately convicted of the charge which resulted in the issuance of the probationary license.
I write separately only because I disagree with the view expressed in the dissent that if a sanction is partially remedial and partially punitive, it always violates the Double Jeopardy Clause of the United States Constitution. Dissenting op. at 1348-49. In reaching that conclusion, the dissent relies primarily on United States v. Halper, 490 U.S. 435, 448, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989) in which the Court said that "it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." (Emphasis added).
The Halper case has, however, been undercut somewhat by the recent case of United States v. Ursery, ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). Regarding that case, the Court said that if the language of that case was to be "applied literally, then virtually every sanction would be declared to be a punishment: it is hard to imagine a sanction that has no punitive aspect whatsoever." Ursery, ___ U.S. at ___ n. 2, 116 S.Ct. at 2146 n. 2. In Ursery, the Court explicitly stated the test that should be employed to determine when a civil sanction is punitive. It said that a sanction is punishment if either (1) it is intended by Congress to be criminal or (2) "`whether the statutory scheme was so punitive either in purpose or effect as to negate' Congress' intention to establish a civil remedial mechanism.'" Ursery, ___ U.S. at ___, 116 S.Ct. at 2142 (quoting United States v. One Assortment of 89 Firearms, 465 U.S. 354, 365, 104 S.Ct. 1099, 1106, 79 L.Ed.2d 361 (1984), quoting United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980)).
It is not difficult to conceive of a statutory scheme in which a requirement that probationary licenses be issued to first time DUI offenders could have a predominantly remedial effect. If, for example, the Legislature had provided that a person with a probationary license could only drive from 9:00 a.m. to 6:00 p.m., the overriding effect of the provision would be remedial because the provision would have the effect of removing the offending driver from the highway during the hours that drinking and driving is most prevalent. Although, arguably, such a restriction on driving is punitive, that aspect of the sanction does not detract from its main thrust, which is remedial.
Under the legislative scheme we have here, however, there is no such remedial effect. The probationary license does not inhibit the licensee's privilege to drive in any way and, consequently, it is impossible to conclude that it has any effect other than to enhance punishment. That being the case, double jeopardy protections are triggered.
Moreover, because the issuance of a probationary license under RCW 46.61.5051 has no remedial effect, the multi-page string citation of authority in the concurrence is largely irrelevant. It is true that administrative revocation or suspension of a driver's license may well have a remedial rather than punitive effect, and thus prove to be no bar on double jeopardy grounds to a criminal prosecution. However, this conclusion simply begs the question in this case, which is whether the probationary license at issue is remedial. Unlike a revocation or a suspension, the probationary license here has no effect other than to punish.
MADSEN and JOHNSON, JJ., concur.
*1348 SANDERS, Justice, (dissenting).
The Fifth Amendment's prohibition against double jeopardy is absolute: "... [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Constitution, Amendment Five. This clause prohibits multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 448, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989).
If reclassifying allegedly intoxicated drivers to "probationary" status is a form of punishment, the initiation of a criminal proceeding to again punish the same conduct violates the double jeopardy clause and the DUI charge must be dismissed. I agree with the trial court that these defendants have been unconstitutionally placed in jeopardy of punishment twice for the same conduct and would affirm the trial court's dismissal. I therefore dissent from the contrary conclusion reached by the majority.
The majority opinion rests upon two propositions: (1) summary license revocation with probationary license substitution is not punishment and (2) a sanction which is only partially punitive does not place one in jeopardy. I disagree, and doubly so.
This probationary license does not alter one's privilege to drive but puts the driver in a special class of drivers singled out for enhanced jail time.[1] This reclassification is, in itself, punitive because its purpose is to deter future criminal misconduct. This defendant is put in jeopardy twice for the same conduct because (1) his license has been revoked and supplemented with a probationary license and (2) DUI criminal charges have been filed as a result of the same incident.
Is this probationary license punishment?
The majority opines, "[P]robationary licenses serve a remedial purpose because they alert the Department and law enforcement officers to a person's probationary status." Majority at 1341 (emphasis added). Why alert the authorities? Do the authorities simply have inquiring minds or do they need to be "alerted" so they will impose more jail time, next time?
The majority's analysis is difficult because any alleged distinction between "remedial" and "punishment" is incoherent; punishment is simply one form of remedy. Another form of remedy might be nonpunitive; however, "remedy" includes both. See Roger Pilon, Criminal Remedies: Restitution, Punishment, or Both?, Ethics 348 (July 1978). I have therefore substituted the alternate generic term "sanction" to include all possible sanctions of a punitive or nonpunitive nature. Double jeopardy applies to punitive sanctions.
When the majority says "[P]robationary licenses serve a remedial purpose" it fails to tell us whether this "remedy" is punitive or otherwise, but apparently assumes "otherwise." Under this statute the only sanction imposed by the probationary license is to substantially enhance mandatory criminal penalties to be imposed upon the driver's second DUI conviction if arrested while driving with a probationary license. The question is therefore whether this sanction reclassification to potentially heightened *1349 criminal penaltiesis "punishment" in itself for the same conduct which led to the DUI charges. Certainly, it is conceded, both the probationary license and the DUI charges result from the same conduct.
If a probationary license imposed under this particular statute is a sanction of a punitive nature, it must be so recognized for double jeopardy purposes.
When considering the problem, I certainly agree with the majority and concurrence that not all sanctions are punitive while some certainly are.
Nonpunitive sanctions might include, for example, compensatory damages, restitution, and forfeiture of stolen property for return to its rightful owner. Punishment, on the other hand, would certainly include penal incarceration as well as the threat of incarceration to deter future criminal acts.
Reclassifying one's license status to "probationary" under this particular statute does not affect the right or scope of the defendant's driving privileges; however, it does subject him to mandatory enhanced penalties should he be arrested on a subsequent occasion. The sole purpose of this reclassification is simply to deter the driver from committing another DUI through threat of enhanced punishment. However, deterrence is punishment for double jeopardy purposes. Halper, 490 U.S. at 448, 109 S.Ct. at 1901-02. Substitution of the probationary license for the normal license is punishment in itself without regard to whether there ever is a subsequent DUI arrest, conviction, or enhanced penalty[2] because it is a licensing status change for the sake of deterrence.
The concurring opinion cites multiple decisions from other jurisdictions essentially holding license suspensions and limitations are nonpunitive sanctions and, thus, do not constitute punishment for double jeopardy purposes. However, those cases may be generally distinguished because they involve administratively removing a driver from the road, or restricting his right to drive in some fashion, whereas the statute at issue changes the licensing status of the driver simply to threaten an enhanced criminal penalty for any subsequent DUI.[3]
A few cases hold an administrative suspension of one's license to drive punitive for double jeopardy purposes, see, e.g., State v. Ackrouche, 70 Ohio Misc.2d 34, 650 N.E.2d 535 (1995), however, such cases must be distinguished for the same reason.

Any double punishment violates double jeopardy
The majority opines that unless a sanction is solely for punishment, the sanction is outside the protection of the double jeopardy clause, citing Halper, 490 U.S. at 448, 109 S.Ct. at 1901-02. However this conclusion is not supported by the literal language of Halper, is inconsistent with other, and subsequent, United States and Washington Supreme *1350 Court precedents, and is overtly inconsistent with the constitutional text.
Halper states:
We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence.... [I]t follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.... We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.
Halper, 490 U.S. at 448-49, 109 S.Ct. at 1902. (Emphasis added.) Halper holds a sanction not "solely remedial" is punishment for double jeopardy purposes. See Carlos F. Ramirez, Administrative License Suspensions, Criminal Prosecution, and the Double Jeopardy Clause, 23 Fordham Urb. L.J. 923, 927-38 (1996). Halper, read as a whole, demonstrates the Supreme Court is faithful to the spirit and meaning of the double jeopardy clause, which prevents double punishment even though one or both of those punishments may also be accompanied by other nonpunitive sanctions or goals. But the construction placed on this language by the majority would have the Supreme Court contradicting itself within the same paragraph. Further, the majority's reading contradicts the plain meaning of the Halper text by ignoring the words "to the extent," which support the proposition that unless the sanction is "solely to serve a remedial purpose" it is to that "extent" not remedial but punitive.
The majority's claim that one may be subject to multiple punishments without violating the double jeopardy clause provided only there be at least some nonpunitive sanction imposed in addition to the punishment or, in the alternative, that the punishment might also promote a nonpunitive objective, is double-talk. The Fifth Amendment forbids multiple punishments without regard to motive and without regard to the additional imposition of nonpunitive sanctions.
Subsequent Supreme Court cases of Department of Revenue v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and United States v. Ursery, ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) deal with the same or related topics and are consistent with Halper.

Civil forfeiture cases distinguished
Austin and Ursery were both civil forfeiture[4] cases arising from the Eighth Amendment prohibition against excessive fines. Thus, they arise in a different factual context and are analyzed under a completely separate and distinct constitutional clause. Nevertheless, each purports to discuss "punishment" for the purpose of the Eighth Amendment excessive fines clause.
Austin involved a civil forfeiture proceeding against a body shop and mobile home after its owner pleaded guilty to a drug offense. The government defended its action under the excessive fines clause, claiming the civil forfeiture was not "punishment" and thus could not be an excessive fine under the Eighth Amendment. Relying on Halper "that civil proceedings may advance punitive and remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties," Austin, 509 U.S. at 610, 113 S.Ct. at 2806 (citing Halper, 490 U.S. at 447, 109 S.Ct. at 1901), the Court held:
[T]he question is not, as the United States would have it, whether forfeiture under §§ 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is punishment.
In considering this question, we are mindful of the fact that sanctions frequently *1351 serve more than one purpose. We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish.
Austin, 509 U.S. at 610, 113 S.Ct. at 2806 (emphasis added). Austin therefore seems to apply the Halper double jeopardy analysis to the excessive fines clause.
Later Austin restates the same point: "Fundamentally, even assuming that §§ 881(a)(4) and (a)(7) serve some remedial purpose, the Government's argument must fail." Id. at 621, 113 S.Ct. at 2812. Austin therefore relies upon the same language in Halper which is relied upon by the respondents here, but in a forfeiture context. It emphasizes in footnote 14 that the nature of the inquiry is whether the sanction is "simply" or "purely" remedial (in which case it is not a punishment) or whether it has any punitive characteristics (in which case it must be considered a punishment for the purpose of the excessive fines clause).
In Ursery a majority of the United States Supreme Court held civil forfeiture, an in rem proceeding, cannot be punishment for the purpose of the double jeopardy clause of the United States Constitution although it may be excessive for the purpose of the excessive fines clause. But for a "fine" to be excessive it must first be a fineand Ursery holds forfeitures are not fines. This may be debatable; however, it does not purport to affect the Court's previously established double jeopardy analysis.
While careful to distinguish civil forfeitures from all other types of sanctions, a footnote to the majority opinion discusses the Halper case in the context of Justice Stevens's dissenting opinion. Ursery, ___ U.S. at ___ n. 2, 116 S.Ct. at 2145 n. 2. There the Court observed:
Whether a particular sanction "cannot fairly be said solely to serve a remedial purpose" is an inquiry radically different from that which we have traditionally employed in order to determine whether, as a categorical matter, a civil sanction is subject to the double jeopardy clause.... If the "general rule" of Justice Stevens were applied literally, then virtually every sanction would be declared to be a punishment: It is hard to imagine a sanction that has no punitive aspect whatsoever.
The context of the footnote suggests the Court was primarily interested in stating even if civil forfeitures are purely or partially punitive that does not subject them to double jeopardy analysis in any event. In dissent Justice Stevens disagreed. Even so, it is clear the majority distinguished forfeitures from all other types of sanctions, drawing a "sharp" distinction between in rem forfeiture and in personam civil penalties.[5]Ursery, ___ U.S. at ___ _ ___, 116 S.Ct. at 2141-142.

Punitive civil sanction cases
Kurth Ranch addressed the double jeopardy question directly in the context of a nonforfeiture Montana tax on illicit drugs. It is the seminal case because it is the United States Supreme Court's last word on the subject at hand. The issue in Kurth was whether or not the tax "has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause." Kurth, 511 U.S. at 778-79, 114 S.Ct. at 1945 (emphasis added). The Court found it did and applied double jeopardy to bar the parallel criminal charges.
As in Kurth, the like question here is whether this probationary license status has any punitive characteristics. If so it is punishment for double jeopardy purposes, and the DUI charges must be dismissed. See *1352 also United States v. Hudson, 14 F.3d 536 (10th Cir.1994).[6]
Both the concurrence to the majority and the concurrence to this dissent argue an inconsistency between the Supreme Court's analysis in Ursery and the Supreme Court's analysis in Halper and Kurth, and thus claim the Ursery analysis should be followed in the case at bar because Ursery is the most recent of the three. Citing language in Ursery to the effect that an excessive fines clause analysis in the Austin forfeiture case should not be "imported" into double jeopardy cases not involving forfeiture or excessive fines, Concurrence at 1344 n. 1 (citing Ursery, ___ U.S. at ___, 116 S.Ct. at 2147), the concurrence suggests the dissenting opinion does not follow Ursery because "the dissent evidently believes the Supreme Court is wrong [in Ursery ]...." This misses the point.
Whether or not the Supreme Court dropped the ball in Ursery (and there is substantial scholarly comment to that effect)[7] is not material to the resolution of this case because Ursery was a forfeiture case decided under the excessive fines clause of the Eighth Amendment whereas the case at bar must be decided under the double jeopardy clause of the Fifth Amendment, as construed by Halper and Kurth Ranch. As stated in Gustafson, 668 N.E.2d at 442 n. 2 (relied upon by the concurrence at 1346): "Ursery does not control disposition of these [licensing] causes before us, which do not involve interim forfeitures...."
State cases on double jeopardy State v. Clark, 124 Wash.2d 90, 98, 100, 875 P.2d 613 (1994) applied a double jeopardy standard to forfeiture facts. The question there was whether or not a civil forfeiture statute in combination with criminal sanctions violated state or federal prohibitions against the imposition of double jeopardy. A unanimous court held, "[A] forfeiture statute must be solely remedial to escape characterization as `punishment' under the federal double jeopardy clause." Clark, 124 Wash.2d at 98, 875 P.2d 613. Clark construed Austin to hold "[i]f the civil forfeiture statute is at all punitive, it is to be deemed `punishment.'" Clark, 124 Wash.2d at 100, 875 P.2d 613. A majority of this court arguably reached the same result in State v. Cole, 128 Wash.2d 262, 295, 297, 300, 906 P.2d 925 (1995) wherein it construed Austin and Clark to require a double jeopardy analysis unless the sanction "serves solely a remedial purpose." Cole, 128 Wash.2d at 295, 906 P.2d 925 (Johnson, J., dissenting).[8]
Whether Clark and Cole are consistent with Ursery's federal (not state) forfeiture analysis remains to be seen; however, clearly these cases facially define the punishment standard for double jeopardy purposes which is the issue presented by this case.
I conclude that this probationary license is wholly punitive, and nothing else. It does not revoke or limit the licensed driver's privilege to drive but is there to deter a subsequent DUI by enhancing the applicable *1353 mandatory minimum jail time. If that isn't punishment, what is? Even if there were also nonpunitive aspects, double jeopardy would still bar the criminal prosecution. I dissent.
NOTES
[1] RALJ 1.1(a) provides in pertinent part:

"(a)Proceedings Subject to Rules. These rules establish the procedure, called appeal, for review by the superior court of a final decision of a court of limited jurisdiction, subject to the restrictions defined in this rule. These rules apply ... to review of (1) district courts...."
[2] O'Connor v. Matzdorff, 76 Wash.2d 589, 596-97, 458 P.2d 154 (1969).
[3] City of Seattle v. Williams, 128 Wash.2d 341, 908 P.2d 359 (1995).
[4] See Laws of 1995, ch. 332; Laws of 1995, 1st Sp. Sess., ch. 17.
[5] Laws of 1994, ch. 275.
[6] Under RCW 46.61.502 it is a gross misdemeanor for a person to (1) drive and have a blood alcohol concentration of 0.10 within two hours after driving, as shown by tests; or (2) drive while under the influence of or affected by intoxicating liquor or drugs; or (3) drive while under the influence of or affected by intoxicating liquor and drugs.
[7] Under RCW 46.61.504 a person commits a gross misdemeanor for being in actual physical control of a motor vehicle and (1) under the influence of intoxicating liquor or drugs within two hours after being in physical control of the vehicle; or (2) while under the influence of or affected by intoxicating liquor or drugs; or (3) while under the influence of or affected by intoxicating liquor and drugs.
[8] RCW 46.20.365(3)(a) (repealed 1995). This section, referring to RCW 46.61.502 and RCW 46.61.504, provided that probationary licenses were issued to persons arrested in such circumstances only if it was the first such incident within five years.
[9] RCW 46.61.5051(1) (repealed 1995).
[10] RCW 46.61.5052(1) (repealed 1995).
[11] See Laws of 1995, ch. 332.
[12] Laws of 1995, 1st Sp. Sess., ch. 17.
[13] See Laws of 1995, ch. 332; Laws of 1995, 1st Sp. Sess., ch. 17.
[14] See Washington Waste Systems, Inc. v. Clark County, 115 Wash.2d 74, 794 P.2d 508 (1990); Miebach v. Colasurdo, 102 Wash.2d 170, 181, 685 P.2d 1074 (1984).
[15] In re F.D. Processing, Inc., 119 Wash.2d 452, 463, 832 P.2d 1303 (1992); Miebach, 102 Wash.2d at 181, 685 P.2d 1074.
[16] Department of Retirement Systems v. Kralman, 73 Wash.App. 25, 33, 867 P.2d 643 (1994).
[17] Adcox v. Children's Orthopedic Hosp. & Medical Ctr., 123 Wash.2d 15, 30, 864 P.2d 921 (1993).
[18] Id.
[19] The Legislature repealed former RCW 46.20.365, which also relates to probationary licenses. In addition, in 1995 it amended sections of the 1994 Act relating to probationary licenses, including former RCW 46.20.355. See Laws of 1995, ch. 332 and Laws of 1995, 1st Sp. Sess., ch. 17 (which contains a complete history of the 1995 legislative changes to the 1994 Omnibus Drunk Driving Act).
[20] State v. Ford, 125 Wash.2d 919, 891 P.2d 712 (1995), reconsideration denied (May 9, 1995); Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc., 125 Wash.2d 305, 311, 884 P.2d 920 (1994).
[21] U.S. v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).
[22] We do not discuss the State's claim under the Washington State Constitution because the State has not analyzed the factors in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), to determine whether the state constitution should be independently or more broadly interpreted. This court will not engage in independent state constitutional analysis when a claimant does not adequately brief the Gunwall factors. State v. Maxfield, 125 Wash.2d 378, 394, 886 P.2d 123 (1994); State v. Wethered, 110 Wash.2d 466, 472-73, 755 P.2d 797 (1988).
[23] 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).
[24] Id.
[25] Id. at 443, 109 S.Ct. at 1899.
[26] Id. at 448, 109 S.Ct. at 1902 (emphasis added).
[27] Br. of Resp'ts at 8-12.
[28] Halper, 490 U.S. at 448-49, 109 S.Ct. at 1902 (emphasis added).
[29] State v. Hickam, 235 Conn. 614, 617-19, 668 A.2d 1321, 1324 (1995); State v. Hanson, 532 N.W.2d 598, 601 (Minn.Ct.App.1995), review granted (Aug. 9, 1995); Tench v. Commonwealth, 21 Va.App. 200, 204-05, 462 S.E.2d 922 (1995).
[30] Halper, 490 U.S. at 449, 109 S.Ct. at 1902.
[31] Compare former RCW 46.61.5051 with former RCW 46.61.5052.
[32] Br. of Resp'ts at 13.
[33] Halper, 490 U.S. at 449, 109 S.Ct. at 1902 (emphasis added).
[34] Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 451, 110 S.Ct. 2481, 2485-86, 110 L.Ed.2d 412 (1990) (quoting 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH A MENDMENT § 10.8(d), at 71 (2d ed. 1987)).
[35] Halper, 490 U.S. at 449, 109 S.Ct. at 1902.
[36] Br. of Appellant at 7. But former RCW 46.20.355(3) and former RCW 46.20.311 did require a $50.00 yearly probationary fee.
[37] 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).
[38] 511 U.S. at 776, 114 S.Ct. at 1944.
[39] 511 U.S. at 784, 114 S.Ct. at 1948 (quoting with agreement language from the dissenting opinion of Rehnquist, C.J. at 787, 114 S.Ct. at 1950).
[40] 511 U.S. at 780, 114 S.Ct. at 1946.
[41] 511 U.S. at 781, 114 S.Ct. at 1947.
[42] Halper, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7.
[43] Kurth Ranch, 511 U.S. at 777, 114 S.Ct. at 1945 (quoting Halper, 490 U.S. at 448-49, 109 S.Ct. at 1902).
[44] 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).
[45] 33 F.3d 1210 (9th Cir.1994), opinion amended on denial of reh'g, 56 F.3d 41, cert. granted, ___ U.S. ___, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).
[46] Austin, 509 U.S. at 621-23, 113 S.Ct. at 2812.
[47] 490 U.S at 447 n. 7, 109 S.Ct. at 1901 n. 7.
[48] Halper, 490 U.S. at 449, 109 S.Ct. at 1902.
[49] Id.
[50] RCW 46.61.5052 (repealed 1995).
[51] Halper, 490 U.S. at 446, 109 S.Ct. at 1900.
[52] Br. of Resp'ts at 14.
[53] O'Day v. King County, 109 Wash.2d 796, 817, 749 P.2d 142 (1988); State v. Scheffel, 82 Wash.2d 872, 879, 514 P.2d 1052 (1973), appeal dismissed, 416 U.S. 964, 94 S.Ct. 1984, 40 L.Ed.2d 554 (1974).
[54] See State v. Zerkel, 900 P.2d 744 (Alaska. Ct.App.1995), reh'g denied (Aug. 14, 1995), and hearing denied (Dec. 4, 1995); Baldwin v. Department of Motor Vehicles, 35 Cal.App.4th 1630, 42 Cal.Rptr.2d 422 (1995), as modified on denial of reh'g (Jul. 7, 1995), and review denied (Sep. 8, 1995); Davidson v. MacKinnon, 656 So.2d 223 (Fla.Dist.Ct.App.), review denied, 662 So.2d 931 (Fla.1995); State v. Higa, 79 Hawai'i 1, 897 P.2d 928 (1995), reconsideration denied (Jun. 13, 1995); State v. Funke, 531 N.W.2d 124 (Iowa 1995); State v. Jones, 340 Md. 235, 666 A.2d 128 (1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1265, 134 L.Ed.2d 213 (1996); State v. Savard, 659 A.2d 1265 (Me.1995); State v. Hanson, 532 N.W.2d 598 (Minn.Ct.App.1995), review granted (Aug. 9, 1995); State v. Young, 3 Neb. App. 539, 530 N.W.2d 269 (1995), review sustained (May 11, 1995); State v. Zimmerman, 539 N.W.2d 49 (N.D.1995); State v. Strong, 158 Vt. 56, 605 A.2d 510 (1992).
[1] The dissent relies on our language in State v. Clark, 124 Wash.2d 90, 98, 875 P.2d 613 (1994): "[A] forfeiture statute must be solely remedial to escape characterization as `punishment' under the federal double jeopardy clause." Clark, in turn, relied on Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), for the same wording. Clark, 124 Wash.2d at 100, 875 P.2d 613. Leaving aside the important question of whether the same considerations that apply in the civil forfeiture arena apply in the context of driver license administration, the Supreme Court has decided the "holding of Austin was limited to the Excessive Fines Clause of the Eighth Amendment, and we decline to import the analysis of Austin into our double jeopardy jurisprudence." United States v. Ursery, ___ U.S. ___, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996). The dissent evidently believes the Supreme Court is wrong about this and relies heavily on Austin for its double jeopardy analysis. We are bound to observe the Supremacy Clause: the Supreme Court's rulings on double jeopardy under the federal constitution control. We have said our state constitution provides no greater double jeopardy protection than the federal constitution. State v. Gocken, 127 Wash.2d 95, 896 P.2d 1267 (1995).
[2] Many states use different terminology for the crime of driving under the influence of alcohol or drugs (DUI). I use DUI as the reference for all such statutes.
[3] Even Justice Stevens, the lone dissenter in Ursery, suggested "administrative licensing sanctions are remedial." Ursery, ___ U.S. at ___ n. 23, 116 S.Ct. at 2161 n. 23.
[4] A statutory scheme providing an enhanced criminal sentence in the future based upon a purely administrative action in the past might raise serious due process (not double jeopardy) concerns. Justice Alexander correctly observes in his concurrence in the dissent, "the probationary license is treated as a prior DUI conviction whether or not the holder of that license is ultimately convicted of the charge which resulted in the issuance of the probationary license." Concurrence in Dissent at 1352. That question is not before us now, and we need not address it.
[5] The dissent's conclusion that the issuance of a probationary license is punishment is strange. As a consequence of the issuance of the probationary license in this case, precisely nothing happened to the respondents. They were not deprived of life, limb, liberty, or property. Nor was there any effect whatsoever on their privilege to drive in Washington. In fact, even though their BAC Datamaster tests indicated they were driving with more than the legal limit of alcohol in their systems, they have not been tried for drunk driving because the court below dismissed the charges against them. The respondents have not been punished. "The risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not `essentially criminal.'" Breed v. Jones, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975). It is only upon the contingency of a future charge for DUI that the effect of the probationary license springs to life. I cannot comprehend how the Double Jeopardy Clause can apply to something that has not yet happened, and may never happen, to require dismissal of the DUI charges in this case.
[1] Compare RCW 46.61.5051 (repealed by Laws 1995, ch. 332, § 21), Alcohol violator with regular licensepenalties with RCW 46.61.5052 (repealed by Laws 1995, ch. 332, § 21), Alcohol violator with probationary licensepenalties. Under the 1994 statutory scheme, a driver with a "regular" nonprobationary license and no DUI convictions within the past five years and whose breath test exceeded .10 but was below .15, faced a mandatory one-day minimum in jail and a ninety-day license suspension. Under similar circumstances, a driver with a probationary license faced a mandatory seven days in jail and a one-year license revocation, even if it was a first conviction. The probationary license lasted for a period of five years from the date the probationary status was imposed. RCW 46.20.355(2), RCW 46.61.5051(4) (repealed by Laws 1995, ch. 332, § 21). The probationary license status continued whether or not there were DUI charges, much less a DUI conviction.
[2] The concurrence states "... the probationary status complained of in the present case imposes no immediate sanction whatsoever on the licensee, and cannot possibly be considered punishment." Concurrence at 1346. I disagree. The "immediate sanction" is revocation of the standard license and substitution of the probationary license. This substitution is punishment because its purpose is deterrence.
[3] The concurrence cites State v. Gustafson, 76 Ohio St.3d 425, 668 N.E.2d 435 (1996) for the proposition that a "civil sanction imposed as a result of administrative license suspension proceeding was not punishment for double jeopardy purposes." Concurrence at 1345. Gustafson must be distinguished because it involves an immediate license suspension which removes the driver from the road. Nevertheless, the opinion affirmatively adds even a summary sanction may not continue beyond the DUI trial, for to do so would violate the constitutional double jeopardy prohibition against multiple punishments for the same offense. ("We therefore hold that an administrative license suspension ceases to be remedial and becomes punitive in nature to the extent it is deemed to continue subsequent to conviction and sentencing for violation of [the DUI statute]." 668 N.E.2d at 448.) I note the probationary license at issue here survives the trial (whatever the result) for five years. RCW 46.20.355(2), RCW 46.61.5051 (repealed by Laws 1995, ch. 332, § 21). Therefore it not only violates double jeopardy but even continues to punish those who are acquitted for the alleged predicate criminal conduct.
[4] Cf. Roger Pilon, Can American Asset Forfeiture Law Be Justified?, 39 N.Y.L. Sch. L.Rev. 311 (1994) (forfeiture in general has gotten out of hand).
[5] By its own terms, Ursery is clearly limited to in rem civil forfeiture cases. "Halper dealt with in personam civil penalties under the Double Jeopardy Clause; Kurth Ranch with a tax proceeding under the Double Jeopardy Clause.... None of those cases dealt with the subject of this case: in rem civil forfeitures for purposes of the Double Jeopardy Clause." Ursery, ___ U.S. at ___, 116 S.Ct. at 2147, 135 L.Ed.2d at 567-68.
[6] [I]f a particular remedial sanction can only be understood as also serving punitive goals, then the person subjected to the sanction has been punished despite that fact that the sanction is also remedial. To conclude otherwise effectively invalidates the Double Jeopardy Clause by allowing multiple punishments for the same conduct merely because the punishments also serve remedial purposes. We therefore must conclude that if a sanction is not exclusively remedial, but rather can only be explained as also affecting deterrence or retribution, it is punishment for double jeopardy analysis.

Hudson, 14 F.3d at 540.
[7] See, e.g., Jeffrey Steinborn, United States v. Ursery; United States v. $405,098.23: Supreme Court closes double jeopardy door, Washington Criminal Defense 10, 11 (Nov.1996) ("[R]ead the Ursery opinion. I recommend some form of sedation as a prelude. But if you want to know what it means, that's simple: The Supreme Court has indulged the government and given it carte blanche to loot."); Roger Pilon, Forfeiting Reason, 3 Regulation 15, 18 (1996) (the reasoning of Ursery opinion is result-oriented, circular, and incoherent); cf. Pilon, supra note 4; Donald Dripps, The Exclusivity of the Criminal Law: Toward a "Regulatory Model" of, or "Pathological Perspective" on, the Civil-Criminal Distinction, 7 J. Contemp. Legal Issues 199 at n. 64 (1996) (the departure taken from existing law by Bennis v. Michigan, ___ U.S. ___, 116 S.Ct. 1560, 134 L.Ed.2d 661 (1996) and Ursery is mistaken).
[8] See Andrew L. Subin, The Double Jeopardy Implications of In Rem Forfeiture of Crime-Related Property: The Gradual Realization of a Constitutional Violation, 19 Seattle U.L.Rev. 253, 262 Winter 1996 ("A nominally civil sanction, an in rem forfeiture, or a tax, [or a license probation] is punitive unless it serves a solely remedial purpose.")